## NATIONAL LABOR RELATIONS BOARD v. HAWK & BUCK CO., Inc.

### No. 9847.

Circuit Court of Appeals, Fifth Circuit.

June 13, 1941.

Rehearing Denied Aug. 1, 1941

Robert B. Watts, Gen. Counsel, Laurence A. Knapp, Associate Gen. Counsel, and Sylvester Garrett, Sr. Atty., National Labor Relations Board, all of Washington, D. C., for petitioner.

Sproesser Wynn, of Fort Worth, Tex., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

On June 27, 1939, United Garment Workers of America, Local No. 229, filed in Case No. XVI-c-396, its third amended charge, alleging that Hawk & Buck, Inc., of Waco, Texas, had engaged in unfair labor practices within the meaning of

Section 8, Subsections 1, 3, and 4, National Labor Relations Act, 29 U.S.C.A. § 158(1, 3, 4), in that it had discharged one, and had first transferred, and later discharged two, employees and has refused to re-employ them. The board then issued its complaint against Hawk & Buck, as to these transfers and discharges, and also complaining in some detail that respondent has engaged and is engaging in a continuous plan and course of action, for the purpose and with the result of interfering with the self-organization of its employees and of discouraging their membership in United Garment Workers Local No. 229.

Respondent, pleaded in abatement that the matters involved had been presented in a prior proceeding which was res judicata of this, and that all of the matters set out in Paragraph 14 of the complaint, had been remedied and cured by a notice respondent had published [1] by agreement between respondent, the union and the board. Respondent further filed pleas, exceptions and denials. There was a full hearing, an intermediate report adverse to respondent and findings and order [2] of

[1] "1. Hawk and Buck Manufacturing Company in its relationship with its employees will not in any manner interfere with, restrain or coerce its employees in the exercise of their rights to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection.

"2. It also is the policy not to discourage membership of its employees in the United Garment Workers of America, Local 229, or any other labor organization by discrimination in regard to hire or tenure of employment or any term or condition of employment.

"3. And further, it is not the policy of Hawk and Buck Manufacturing Company to interfere in any manner with the formation or administration of any labor organization (as defined by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.) of its employees or contribute financial support thereto."

[2] "1. Cease and desist from: (a) Discouraging membership in United Garment Workers of America, Local No. 229, or any other labor organization of its employees, by discharging, transferring, laying off, or refusing to reinstate any of its employees, or in any other manner discriminating in regard to their hire or tenure of employment or any term or condition of employment;

"(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of their right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection as guaranteed in Section 7 of the Act.

"2. Take the following affirmative action, which the Board finds will effectuate the policies of the Act: (a) Offer to Bertha Shelnutt and Roxie Moser immediate and full reinstatement to the positions occupied by them immediately prior to their transfers on August 10, 1938, and September 29, 1938, respectively, or to substantially equivalent positions, and offer to Lula Godsey immediate and full reinstatement to her former, or a substantially equivalent, position and continue to employ Lula Godsey for a minimum period of 4 months under working conditions that would afford her a fair and reasonable opportunity to earn the minimum wage required under the Fair Labor Standards Act [29 U.S.C.A. § 201 et seq.], all without prejudice to the seniority and other rights and privileges of the aforesaid three employees, and in accordance with the principles laid down in the section above entitled "The Remedy";

"(b) Continue Lula Godsey as a regular employee after termination of the aforesaid 4-month period, without prejudice to her seniority or other rights and privileges, in the event that her average weekly earnings during the last 3 weeks of such 4-months' period are at least equal to the minimum wage required under the Fair Labor Standards Act;

"(c) Make whole Bertha Shelnutt and Roxie Moser, and Lula Godsey, for any loss of pay they may have suffered by reason of the respondent's discriminatory acts, by paying to each of them a sum of money equal to that which she would normally have earned as wages from August 10, 1938, September 29, 1938, and December 9, 1938, respectively, until the date of offer of reinstatement, less the respective net earnings of each of the aforesaid employees during said periods; deducting, however, from the amount otherwise due each of these employees, monies received by her during said period for work performed upon Federal, State, county, municipal, or other work-relief projects and paying over the amount so deducted to the appropriate fiscal agency of the Federal, State, coun-

the board also adverse. The board found; that late in April, 1938, the union began an organizational drive among respondent's employees; that shortly thereafter respondent took steps designed in large part to impede the growth of the union and to otherwise discourage the exercise by its employees of the rights guaranteed by the act. These steps are set out at length in the findings and it may not be doubted that if they were taken, they had the purpose and effect to impede the growth of the union and discourage membership in it and that they were in violation of the act.

The board also found that Bertha Shelnutt, Lula Godsey and Roxie Moser, were discriminated against in regard to hire and tenure of employment on account of union activities in violation of the act. Upon the issue tendered in the plea in abatement, that respondent had adjusted the unfair labor practices, by posting a notice, by agreeing not to commit further unfair labor practices, and by its reinstatement at that time, of Godsey, the board found that the respondent had not observed its agreement but had breached it by continuing to engage in unfair labor practices after its making. The board, as petitioner, seeking enforcement of its order, urges upon us that the evidence sustained its findings and that its order is appropriate under the statute. The respondent, opposing enforcement and seeking vacation of the order, vigorously complains that the board has erroneously given consideration, to what transpired before, as well as to what transpired after, and as vigorously insists; that the evidence as to what transpired after the agreement, affirmatively establishes beyond question,

that the transfers and discharges of the three employees named, were made for good and sufficient cause, and for reasons having nothing to do with their offices or activities in the union; and that the findings and order of the board are without support in the evidence, and wholly inappropriate to effect the policies of the act.

We cannot agree with the respondent. The board was right in its holding that it is not controlling that there was an agreement to refrain from unfair labor practices and a posting of notices that such practices will be refrained from. What is controlling is whether that agreement has been complied with, the unfair practices have been discontinued. It was therefore entirely proper for it, in determining the matters at issue before it, to view the evidence as a whole, including the practices before, as well as those after the agreement and posting.

So viewed, we think it may not be at all doubted that the evidence fully sustains the findings of the board and that there is no inappropriateness in its order. This being our view and our function being to enforce the board's order, unless its findings are without support in the evidence, or its order is inappropriate, it can serve no useful purpose for us to set out the evidence here. It will suffice to say that it affords ample basis here for the conclusions the board drew; that the discharges were unfair labor practices; and that same were a part of a system of unfair labor practices which also should be restrained.

The petition of the board will be granted and a decree enforcing its order as written may be presented for entry.

---

ty, municipal, or other government or governments, which supplied the funds for such work-relief projects;

"(d) Immediately post, and keep posted for a period of at least sixty (60) consecutive days from the date of posting, in conspicuous places throughout its plant at Waco, Texas, notices to its employees stating that it will cease and desist in the manner set forth in paragraphs 1 (a) and (b) and that it will take the affirmative action set forth in paragraphs 2 (a), (b),

and (c) of this Order; that the respondent's employees are free to become or remain members of the United Garment Workers of America, Local No. 229; and that the respondent will not discriminate against any employee because of membership or activity in that organization;

"(e) Notify the Regional Director for the Sixteenth Region in writing within ten (10) days from the date of this Order what steps the respondent has taken to comply therewith."